**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LUKE BURNS and IWONA BURNOS, )
                                     )
           Plaintiffs,            )         No. 12-cv-484
                                       )
           v.                     )        Judge Robert M. Dow, Jr.
                                       )
VILLAGE OF CRESTWOOD,          )
CHRISTOPHER SODERLUND,       )
CHRISTOPHER HULL,             )
JEFFREY BELL, ANNETTE KMIECIK,   )
ARTHUR RONAN, STEVEN GOMBOZ, )
and BRIAN ZIOLKOWSKI,         )
                                       )
           Defendants.         )

## MEMORANDUM ORDER AND OPINION

Luke Burns and Iwona Burnos ("Plaintiffs") brought suit against the Village of Crestwood, Christopher Soderlund, Christopher Hull, Jeffrey Bell, Annette Kmiecik, and Steve Gomboz ("Defendants") for unlawful entry, excessive force, false arrest, malicious prosecution, failure to intervene, and indemnification arising out of Burns' arrest and prosecution for theft and resisting arrest in 2010.[1]  This matter is now before the Court on Defendants' motion for partial summary judgment [86].  For the reasons stated below, the Court grants Defendants' motion. Defendants are entitled to summary judgment on Plaintiffs' claims for unlawful entry (Counts I and II), false arrest (Count IV), and malicious prosecution (Count V).  Defendant Bell is also entitled to summary judgment on Plaintiffs' claim for failure to intervene (Count VI).  The following claims remain in the case: the excessive force claim against Defendants Gomboz, Kmiecik, and Soderlund (Count III); the failure to intervene claim against Defendants Gomboz, Kmiecik, and Soderlund (Count VI); and the indemnification claim against the Village of

---

[1] Although they are still listed in the case caption, Defendants Ronan and Ziolkowski have not been a part of this proceeding since Plaintiffs filed their amended complaint on June 20, 2012.  See [23].

Crestwood (Count VII).

## I.      Local Rule 56.1 Statements

"The Northern District has promulgated Local Rules 56.1(a) and 56.1(b) to delineate the parties' obligations in summary judgment proceedings, and the court has broad discretion to enforce these rules." *Kiswani v. Phoenix Sec. Agency, Inc.*, 529 F. Supp. 2d 949, 951 (N.D. Ill. 2008). Local Rule 56.1(a) requires the party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. R. 56.1(a)(3). The statement must "consist of short numbered paragraphs" that refer to "materials relied upon to support the facts set forth." N.D. Ill. R. 56.1(a). Defendants have substantially complied with Local Rule 56.1(a). They submitted a Local Rule 56.1(a) Statement [88] with short numbered paragraphs referring to the following supporting documents: (1) Defendant Soderlund's affidavit [92]; (2) an excerpt of the transcript from Soderlund's deposition [88-2]; (3) a permission to search form signed by Plaintiff Burns [88-3]; (4) a written statement signed by Plaintiff Burns [88-4]; (5) Defendant Gomboz's affidavit; (6) an excerpt of the transcript from Burns' criminal trial in Cook County [88-6]; (7) an excerpt of the transcript from Burns' deposition [88-7]; (8) Burns' bankruptcy petition [88-8]; and (9) Burns' bankruptcy discharge [88-9]. The Court has carefully reviewed Defendants' Local Rule 56.1(a) Statement and "eliminate[d] from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012).

Local Rule 56.1(b) requires the party opposing summary judgment to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any

disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B). Plaintiffs, who are represented by counsel, failed to comply with Local Rule 56.1(b) or to respond to Defendants' motion at all, despite an extended briefing schedule [91].[2] Plaintiffs' failure to comply with Local Rule 56.1(b) is "equivalent to admitting the [Defendants'] case." *Mintjal v. Prof'l Benefit Trust*, 2015 WL 5721612, at *2, -- F. Supp. 3d -- (N.D. Ill. Sept. 29, 2015). Indeed, "the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted." *Id.* Moreover, the Court will not "scour the record looking for factual disputes." *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015). Cf. *Kasak v. Vill. of Bedford Park*, 563 F. Supp. 2d 864, 867 (N.D. Ill. 2008) (district court will ignore any "documents submitted with a motion that are not referred to in the statement of facts"). The Seventh Circuit "has repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions, including by disregarding evidentiary documents because a required statement of facts was not filed." *Thornton*, 796 F.3d at 769. In short, in view of the absence of any response by Plaintiffs, the Court will deem admitted all of Defendants' factual allegations to the extent that they are supported by the record and will not scour the record in an attempt to locate any factual disputes that Plaintiffs have failed to identify.[3]

---

[2] At the August 27, 2015 hearing on Defendants' motion [89], the Court extended the briefing schedule to allow Plaintiffs until October 22, 2015 to file their response [91].

[3] The Court notes, in particular, that Defendants have submitted a portion of the transcript from Plaintiff Burns' deposition [88-7], which contains statements that contradict certain factual statements made in Defendants' Local Rule 56.1(a) Statement and supporting materials. The Court will not rely on Burns' testimony to identify any factual disputes. Plaintiffs chose not to respond to summary judgment despite

## II.    Background

On April 27, 2010, Defendant Detective Sergeant Soderlund ("Soderlund") was asked to investigate a theft that was reported by Charles and Geraldine Cozzo (the "Cozzos") of Crestwood, Illinois.  The Cozzos told Soderlund that two individuals, Plaintiff Luke Burns ("Burns") and Ludovic Bota ("Bota," who is not a party to this lawsuit), had recently worked in their residence installing new floors in the bedrooms and hallways.  The Cozzos told Soderlund that they discovered that several valuable collector coins were missing after Bota and Burns completed their work and left the residence.  The Cozzos explained that the coins had been kept in a dresser in one of the rooms where Bota and Burns worked and that, besides themselves, only Bota and Burns had access to the residence and the coins.  Mr. Cozzo also told Soderlund that he had hired Burns to perform additional work in the house and had already paid Burns $1,300.00 for that work.  Mr. Cozzo stated that in light of the missing coins, he did not want either Bota or Burns back in his house.  Mr. Cozzo said that he had already contacted Burns and told him he was not welcome back in the house.

On April 30, 2010, Soderlund, Defendant Officer Christopher Hull ("Hull") and Defendant Officer Jeffrey Bell ("Bell") drove to Burns' residence in Crestwood, Illinois.  They arrived at approximately 3:00 to 4:00 p.m.  As they pulled up to the house they saw an individual in the driveway, who turned out to be Burns.  At that time, Burns was 23 years old, had attended two years of high school, and was employed as a woodworker.

Soderlund exited the vehicle, spoke with Burns, told him why he and the other officers were present, and explained the allegations that had been directed against him by the Cozzos.

---

the existence of Burns' contradictory testimony and the Court has no reason to presume that this was anything other than a conscious decision.

Soderlund also told Burns that the Cozzos wanted their $1,300 returned.[4]  Soderlund asked Burns if he would execute a consent to search.  Burns stated that he would execute a consent to prove that he did not steal the coins.  Burns signed the consent to search form at approximately 5:10 p.m.  [88-3] at 1.  Burns admitted at his deposition that he was not threatened prior to signing or forced to sign the form.  [88-7] at 4.  Burns also admitted that he was not concerned about the officers entering his house because he thought that they would enter the house, realize he was telling the truth, and the problem would go away.

After Burns signed the consent, Soderlund and Hull walked up to Burns' residence and knocked on the door.  Burns' mother, Plaintiff Iwona Burnos ("Burnos"), opened the door and Soderlund explained to her why the officers were present.  He told Burnos that her son was being cooperative and had given the officers permission to search for the missing coins.  Burnos escorted the officers up the staircase, down a hall and over to Luke's bedroom.  The officers searched the dresser top and briefly searched the closet.  Burnos then led the officers to an area outside the kitchen that appeared to be some type of office.  Soderlund and Hull proceeded to search that area.  Soderlund and Hull were checking to see if the coins had been left out in the open and their search was not extensive.

Burnos then indicated that there was someone else in the residence but did not identify who that individual was. Soderlund believed that there could be another suspect downstairs.  He asked Burnos to sit outside on the porch while he and Officer Hull made contact with the individual who lived in the basement.

---

[4] Defendants assert in their Local Rule 56.1(a) statement that "Soderlund also mentioned the Cozzos' allegations of home repair fraud."  [88] at 3, ¶ 12.  However, in his deposition, Soderlund admitted that "the topic of home repair fraud never came up" during that discussion.  [88-2] at 3 (Tr. at 67:11-14).  Instead, Soderlund testified that Burns "was made aware of the [Cozzos'] desire to have the money returned, and had agreed to return it to the Cozzos but had not returned it as of yet."  *Id.* (Tr. at 67:1-10).

Soderlund and Hull then exited the house and walked outside. Soderlund told Burnos that the officers were going to transport Burns to the Crestwood Police station for further investigation. Burnos asked if she could remain with her son and Soderlund said yes. The officers, Burns and Burnos arrived at the Crestwood station between 5:30 and 6:00 p.m. Soderlund met with Burns at approximately 6:30 p.m. During the course of the meeting, Soderlund advised Burns of his Miranda rights. Soderlund states in his declaration that Burns signed a pre-printed form acknowledging his Miranda rights; however, Defendants have not submitted a copy of the form to the Court. See [92] at 3. Burns then made a verbal statement which Soderlund reduced to writing [88-4].

The written statement contains the following information: While Burns was working at the Cozzos' residence, he spoke with Mr. Cozzo about doing some additional work at the house. Burns agreed to repaint the interior of the house and the Cozzos gave him a check for $1,300.00, which Burns cashed and used to pay bills. Burns acknowledged that the Cozzos no longer wanted him to work at their house and he agreed to return the $1,300.00. Burns acknowledged that he had to pay the $1,300.00 back and stated his willingness to do so. Burns had new jobs starting and would be able to repay the $1,300.00 by no later than June 1, 2010. Burns understood that he was to bring the money to the Crestwood Police Department and Sergeant Soderlund would provide him with a receipt for the money. Burns also understood that if he was unable to make the full payment, he was to contact Sergeant Soderlund to offer an explanation for his failure to do so. Burns acknowledged that his failure to comply with the agreement would be considered a theft and he would be arrested and prosecuted.

On June 10, 2010, Soderlund spoke with Burns on the phone and Burns told him that he was unable to return the money but would be able to return it within two weeks. Between June

10 and July 11, 2010, Soderlund attempted, unsuccessfully, to contact Luke Burns. On July 11, 2010, Defendant Commander Ronan ("Ronan") and Defendant Detective Gomboz ("Gomboz") drove to Burns' residence and attempted to apprehend Burns. Gomboz knocked on the door several times and saw an individual looking out of the window, but no one came to the door.[5]

On August 27, 2010, Soderlund, Gomboz and Defendant Officer Kmiecik ("Kmiecik") drove to Burns' residence to arrest him. Kmiecik, who was dressed in civilian clothes, walked up to the front door. Meanwhile, Gomboz and Soderlund, wearing civilian attire with police vests and belts, were concealed behind a vehicle parked in the driveway. Soderlund decided to have Kmiecik go to the door because she is a younger female and Burns had never met her. The operative plan was to have Kmiecik, in civilian clothes, walk up to the door and ask for Burns. Soderlund reasoned that Burns would walk outside to talk to Kmiecik and the officers could then lawfully arrest him.

From where he was positioned, Soderlund had an unobstructed view of the door and he saw Kmiecik walk up to the door and ring the doorbell. After Kmiecik knocked on the door, Burnos answered. While he could not hear the specifics of the conversation, Soderlund determined that Kmiecik was speaking to Burnos in Polish. After Kmiecik spoke to Burnos, Burnos turned and called for Burns. Burns walked up to the front door, saw Kmiecik, and stepped outside onto the porch. After Burns stepped out onto the porch, Gomboz and Soderlund stood up, Soderlund yelled "police officer, don't move," and Gomboz and Soderlund ran toward the front door. [88-2] at 13. At this point Kmiecik grabbed Burns by the arm and also said

---

[5] In their Local Rule 56.1(a) Statement, Defendants state that Gomboz "saw Burns looking out the window but he refused to come to the door." [88] at 6, ¶ 43. However, in his declaration, Gomboz does not claim to know that the person he saw in the window was Burns. [88-5] at 1.

"Police officer, don't move." *Id.*[6]

Burns pushed Kmiecik's hand off of him and ran into the house. Burns and Burnos attempted to push the door closed on the officers, while the officers tried to push the door open. Soderlund managed to push the door open. At that point, Burns was approximately five to seven feet away and running up the staircase. As Soderlund entered the house, he announced again that he was a police officer. Burns ran up the stairs and into the kitchen. Soderlund chased Burns. Soderlund was able to grab onto Burns and the two men fell to the kitchen floor with Soderlund on top. Soderlund placed Burns in handcuffs. Neither Soderlund nor any other officer present drew his or her sidearm and Soderlund was the only officer who had physical contact with Burns up to this point.

Because Burns was not wearing shoes, Soderlund asked Burnos to secure a pair of shoes for him. Kmiecik obtained a pair of shoes from Burnos and she assisted Burns in putting the shoes on his feet. Soderlund alone escorted Burns out of his residence. Burns was placed under arrest and charged with theft of $1,300 and resisting arrest. [92] at 3. Soderlund prepared and filed two criminal complaints against Burns in Cook County, Illinois. Soderlund alone made the determination to charge Burns with theft (Count 1) and resisting arrest (Count 2).

On July 14, 2010, Burns filed a voluntary petition for bankruptcy in which he sought relief under Chapter 7. Burns listed Mrs. Cozzo as an unsecured creditor to whom he owed $1,300.00. Burns was granted a bankruptcy discharge on November 9, 2010.

---

[6] In his deposition, Burns testified that the "female officer" (presumably, Kmiecik) tried to pull him out of his house through the front door. [88-7] at 5 (Tr. 149:12-18). The transcript also indicates that Burns denied knowing that Soderlund or Gomboz were police officers when they jumped out of the bushes in front of his home. *Id.* at 5 (Tr. 150:7-18). The Court does not credit this testimony because Plaintiff chose not to bring it to the Court's attention to oppose summary judgment.

On May 11, 2011, Cook County Circuit Court Judge Havis held a bench trial on the charges against Burns. Defendants Kmiecik and Soderlund were the only witnesses who testified. At the close of evidence, Burns' attorney moved for a directed verdict. The motion was denied. Judge Havis found Burns not guilty of theft (Count 1), because there was no testimony concerning the alleged theft. [88-6] at 16-17. Judge Havis found Burns not guilty of resisting arrest (Count 2), at least in part because there was a defect in the original charging document. *Id.* at 17.

Burns and Burnos filed the instant lawsuit against Defendants on January 23, 2012. The governing second amended complaint [43] contains the following claims:

| Count | Claim | Defendants |
|-------|-------|------------|
| I | Unlawful entry into home, 42 U.S.C. § 1983 (April 30, 2010) | Bell, Hull, Soderlund |
| II | Unlawful entry into home, 42 U.S.C. § 1983 (August 27, 2010) | Gomboz, Kmiecik, Soderlund |
| III | Excessive force, 42 U.S.C. § 1983 (August 27, 2010) | Gomboz, Kmiecik, Soderlund |
| IV | False arrest, 42 U.S.C. § 1983 (August 27, 2010) | Gomboz, Kmiecik, Soderlund |
| V | Malicious prosecution, Illinois state law claim | All individual Defendants |
| VI | Failure to intervene, 42 U.S.C. § 1983 | All individual Defendants |
| VII | Indemnification, 745 ILCS 10/9-102 | Village of Crestwood |

### III. Legal Standard

Defendants move for partial summary judgment against Plaintiffs. As noted above, Plaintiffs failed to respond to the motion.[7] Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477

---

[7] Plaintiffs' response was due by October 22, 2015. See [91].

U.S. 317, 323 (1986). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV.    Analysis

### A.    April 30, 2010 Unlawful Entry

In Count I of their complaint, Plaintiffs allege that Soderlund, Hull, and Bell, "or some of them," entered Plaintiffs' home on April 30, 2010 without a warrant, consent, exigent circumstances, or any other legal justification, in violation of their Fourth Amendment right to be free from unreasonable searches. [57] at 10. Defendants move for summary judgment on Count I on two grounds, which the Court addresses in turn.

#### 1.    Entry into home (Defendant Bell)

Defendant Bell argues that he is entitled to summary judgment on Count I because he never entered Plaintiffs' home. Considering the record in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002), the Court concludes that Bell is entitled to summary judgment. "A warrantless entry into a private home constitutes a search and presumptively is unreasonable under the Fourth Amendment." *Leaf v. Shelnutt*, 400 F.3d 1070, 1081 (7th Cir. 2005). Here, there is no evidence in the record that Bell ever made an "entry" into Plaintiffs' home, nor any evidence from which that inference could be drawn. Nor can Plaintiffs show that Bell had a duty

to intervene to stop Soderlund or Hull's entry and search because, as discussed in the next section of this order, Burns consented to the search. Therefore, Defendant Bell is entitled to summary judgment on Count I.

## 2. Permission to enter home (Defendants Soderlund and Hull)

Defendants Soderlund and Hull argue that they are entitled to summary judgment on Count I because Burns freely and voluntarily gave them permission to enter and search his residence on April 30, 2010. The Court concludes that Soderlund and Hull are entitled to summary judgment on Count I. "It has long been established that warrantless searches are unreasonable under the Fourth Amendment unless (1) exigent circumstances and probable cause exist or (2) consent is given." *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 923 (N.D. Ill. 2013) (citing *Reardon v. Wroan,* 811 F.2d 1025, 1027-28 (7th Cir. 1987)). Here, Defendants present evidence that Burns consented to their search of his home. Prior to Soderlund and Hull's entry into his home, Burns signed a "Permission to Search" form, which states: "I am giving this written permission to these officers freely and voluntary, without any threats or promises having been made, and after having been informed by said officer that I have a right to refuse this search and/or seizure." [88-3] at 1.

In order to survive summary judgment, Plaintiffs were required to come forward with evidence that "the consent was invalid because it was given under duress or coercion." *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997). "Whether an individual voluntarily consented to a search is a factual assessment that turns on the totality of the circumstances." *United States v. Raibley*, 243 F.3d 1069, 1075 (7th Cir. 2001). "Relevant factors include (1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was

prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent." *Id*. at 1075-76.

Plaintiffs have not come forward with any evidence suggesting that Burns' consent was involuntary. Burns admitted at his deposition that he was not threatened prior to signing or forced to sign the consent to search form. [88-7] at 4. According to Burns, he was not concerned about the officers entering his house because he thought that they would enter the house, realize he was telling the truth, and the problem would go away. Additionally, all six factors set forth in *Raibley* either favor Defendants or are neutral. First, Burns was 22 and had some high school education when he was questioned by police, and there are no facts calling into question his intelligence. Second, Burns was advised of his constitutional rights. The consent form he signed told him that he had a right to refuse the search. Third, Burns had been detained by police for no more than thirty minutes before he gave consent to search. Fourth, there is no evidence that Burns ever refused consent before ultimately consenting. Fifth, there is no evidence that Burns was physically coerced into giving consent. Sixth, the Court cannot determine from Defendants' brief or the record whether Plaintiff was in custody when he gave consent to search. See [87] at 10. Even if Burns was in custody, this factor alone does not warrant the denial of summary judgment, because Burns admitted in his deposition that he was not threatened or forced to consent to the search. [88-7] at 4.

Viewing these circumstances in their totality and in the light most favorable to Plaintiffs, the Court concludes that Burns consented to the search of his home on April 30, 2010 and Soderlund and Hull are entitled to summary judgment on Count I. It is unnecessary for the Court to reach Defendants' alternative argument for summary judgment on Count I, based on qualified immunity.

**B.      August 27, 2010 Unlawful Entry**

In Count II of their complaint, Plaintiffs allege that Soderlund, Kmiecik, and Gomboz, "or some of them," entered Plaintiffs' home on August 27, 2010 without a warrant, consent, exigent circumstances, or other legal justification, in violation of the Fourth Amendment right to be free from unreasonable searches.  Defendants concede that they did not have a warrant or consent to enter Plaintiffs' home on August 27, 2010, but argue that they did not violate the Fourth Amendment by following Burns into his home "in hot pursuit" to finish arresting him. [87] at 18.  Defendants argue in the alternative that they are entitled to qualified immunity because it was not clearly established by August 27, 2010 that their conduct violated the Fourth Amendment.

The Court concludes that Soderlund, Kmiecik, and Gomboz's actions were not clearly lawful under governing Fourth Amendment precedent, but that Defendants are nonetheless entitled to qualified immunity because it also was not clearly established as of August 27, 2010 that their actions were unlawful.

"[P]olice officers may constitutionally arrest an individual in a public place (*e.g.*, outside) without a warrant, if they have probable cause."  *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001).  However, "'searches and seizures inside a home without a warrant are presumptively unreasonable.'"  *Welsch v. Wisconsin*, 466 U.S. 740, 749 (1984) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  The Fourth Amendment "draw[s] a firm line at the entrance of the house" because "[t]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *Payton*, 445 U.S. at 585, 590.  Therefore, "police officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause."  *Sparing*, 266 F.3d

at 688.  In this case, Burns did not consent to Defendants' entry into his home on August 27, 2010; therefore, Defendants' entry must have been supported by both probable cause and exigent circumstances.

The Court first considers whether Defendants had probable cause to arrest Burns.  "'An officer has probable cause to make an arrest only when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense.'"  *United States v. Daniels*, 803 F.3d 335, 354 (7th Cir. 2015) (quoting *Reher v. Vivo,* 656 F.3d 772, 776 (7th Cir.2011)).  "Courts look to a totality of the circumstances, and ask whether a reasonable officer would believe that the suspect had committed a crime."  *Id.*

Burns was charged with theft and resisting a police officer.  Illinois' theft statute provides that "[a] person commits theft when he or she knowingly * * * [o]btains or exerts unauthorized control over property of the owner."  720 ILCS 5/16-1.  At the time of Burns' arrest, Soderlund had interviewed the Cozzos, knew that Burns had signed a restitution agreement acknowledging that he could be arrested for theft if he did not pay the Cozzos $1,300 by a set date, knew that Burns had failed to meet this deadline, and knew that Burns was not answering his phone calls. In light of these facts and in the absence of any response from Plaintiffs, the Court concludes that Defendants had probable cause for the theft charge.  A reasonable officer in Defendants' position would have believed that once Burns missed the deadline for paying back the Cozzos, Burns was exerting unauthorized control over the Cozzos' money with the intent to deprive them of the money.  It is irrelevant whether Burns had an intent to steal at the time he took the Cozzos' check, because he subsequently recognized that he had an obligation to return the Cozzos' money.  Under Illinois' theft statute, even if the defendant came into possession of the victim's

property rightfully in the first instance, the defendant "may nonetheless commit theft when he 'exerts unauthorized control over' another person's property, as by refusing to return the property to its rightful owner." *Williamson v. Curran*, 714 F.3d 432, 444 (7th Cir. 2013). See also *People v. McIntosh*, 363 N.E.2d 128, 130-31 (Ill. App. 1977) ("[T]he crime of theft charged under Section 16-1(a)(1) of the Criminal Code need not necessarily begin at the time of the original taking, but may exist at the time of the arrest. Thus, a defendant may be convicted of theft even though his guilt of the initial taking is subject to considerable doubt." (citations omitted)).

The Court next considers whether there was probable cause for the resisting arrest charge. Under Illinois law, "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer * * * of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1. See also *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 721 (7th Cir. 2013) ("a person commits obstruction or resistance of a peace officer when, (1) knowing that one is a peace officer, (2) he or she knowingly resists or obstructs (3) the officer's performance of an authorized act"). "The Illinois Supreme Court has held that section 5/31–1(a) does 'not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe[s] only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent[,] or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest[,] or physically aiding a third party to avoid arrest.'" *Id.* (quoting *People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968)). It is undisputed that when Burns came out onto his porch, Kmiecek told Burns "Police officer. Don't move" and grabbed Burns' arm. It is also undisputed that Burns pushed Kmiecek's arm away, stepped back

into his home, and attempted to close the door on the officers. Based on these undisputed facts, Defendants had reason to believe that Burns had committed the offense of resisting arrest.

The Court now turns to the question of whether exigent circumstances justified Defendants' warrantless entry into Burns' home. "[T]he burden is on [Defendants] to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). Defendants rely on *United States v. Santana*, 427 U.S. 38 (1976), to support their argument that chasing Burns into his home in "hot pursuit" to complete his arrest did not violate the Fourth Amendment. In *Santana*, the police suspected "Ma" Santana of distributing heroin and received a tip that she was holding marked money to make a heroin buy. *Id.* at 40. Officers drove to Santana's house and observed her standing in the doorway holding a paper bag. The officers "pulled up to within 15 feet of Santana and got out of their van, shouting 'police,' and displaying their identification." *Id.* As the officers approached, "Santana retreated into the vestibule of her house." *Id.* The officers followed through the open door and caught Santana in the vestibule of her home, arrested her, and seized heroin and marked bills. *Id.* Santana moved to suppress the heroin and marked money.

The Supreme Court first assessed whether Santana had a reasonable expectation of privacy while standing in the threshold to her home. The Court held that a criminal suspect who is standing in the doorway to her home, and is "not merely visible to the public" but also "exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house," is considered to be in a public place where she has no expectation of privacy. *Santana*, 427 U.S. at 42. The Supreme Court next examined whether Santana's "act of retreating into her house could thwart an otherwise proper arrest." *Id.* The Court answered in the negative

because the case involved "a true 'hot pursuit.'" *Id.* The Court also found that the entry to arrest Santana was justified because there was "a realistic expectation that any delay would result in destruction of evidence." *Id.* at 43. The Court concluded that a "suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place," *i.e.* the suspect's home. *Id.* See also *Cleveland v. Liberio*, 2009 WL 2705023, at *3 (N.D. Ill. Aug. 24, 2009) ("*Santana* found that a person standing alone at the threshold of a doorway completely exposed to public view has no reasonable expectation of privacy, and therefore a subsequent retreat further into the home does not bar warrantless entry if there are exigent circumstances.").

The Court recognizes the similarities between *Santana* and this case: in each case, the police were attempting to make an arrest in a public place when the suspect fled back into his or her home. Like Santana, who was standing in her doorway when the police shouted "police," the undisputed evidence in this case is that Burns was on his porch and fully exposed to public view when Defendants told him, "Police, don't move."[8] However, there are differences between Burns and Santana which militate against granting summary judgment based on *Santana*.

First, unlike Santana, who was engaging in a drug transaction when the police pulled up, Burns was suspected of committing a theft that had been completed weeks earlier. It is less clear in this case that the police were in a true "hot pursuit" when they entered Burns' home. The Supreme Court recognizes "hot pursuit" as one of "several exigencies that may justify a warrantless search of a home." *Kentucky v. King*, 563 U.S. 452, 460 (2011). Thus, "[p]olice officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect."

---

[8] Although Burns provided deposition testimony that might call into question whether he came out onto the porch or instead was standing fully within his house, Burns has abandoned reliance on that testimony by failing to respond to summary judgment. The Court will not second-guess Burns' decision by considering evidence that he chose not to bring to the Court's attention.

*Id.* (citing *Santana*, 427 U.S. at 42-43). The Supreme Court describes "hot pursuit" as the "immediate or continuous pursuit of the [suspect] from the scene of a crime." *Welsh*, 466 U.S. at 753 (individual's warrantless arrest in the privacy of his own bedroom for a noncriminal traffic offense could not be justified on the basis of the "hot-pursuit" doctrine, since there was no immediate or continuous pursuit of individual from scene of crime). See also 5 Am. Jur. 2d Arrest § 101 ("Hot pursuit describes the situation when the police are pursuing a suspect who is in the process of fleeing from a recently committed crime."). In this case, Defendants were *not* in hot pursuit of Burns when they went to his home to arrest him for theft. Burns committed the alleged theft on June 1, 2010, when he failed to return the Cozzos' money as promised. Defendants waited until weeks later, on August 27, 2010, to apprehend Burns.

Nonetheless, the Court finds based on the undisputed facts that Defendants were in hot pursuit of Burns for resisting arrest, because the alleged resistance—Burns pushing Kmiecek's arm off of his arm ([88-2] at 13)—occurred immediately before Burns fled into his house, with Soderlund in pursuit. Cf. *e.g.*, *Thompson v. Vill. of Monee*, 110 F. Supp. 3d 826, 845 (N.D. Ill. 2015) (police officer's warrantless entry into suspect's garage to effectuate arrest was reasonable under "hot pursuit" exception to warrant requirement; police officer was in suspect's garage only because he followed suspect to garage after suspect twice disobeyed police orders and drove away from intersection where other officers were conducting questioning and from where officer specifically told suspect to stop his vehicle); *People v. Wear*, 893 N.E.2d 631, 646 (Ill. 2008) (hot-pursuit exception to warrant requirement allowed law enforcement officer to enter residence of defendant's girlfriend to arrest defendant for non-felony DUI, where officer had probable cause to arrest defendant for DUI and defendant ignored officer's five or six commands to stop and return to her vehicle before she fled from her vehicle into the house).

The second significant difference between *Santana* and this case is the seriousness of the underlying criminal charges. *Santana* was charged with a felony. Burns was charged with two crimes for which the base offense is a misdemeanor: theft and resisting arrest. Defendants do not argue and provide no evidence that Burns was charged with felonies, so the Court assumes that the charges were misdemeanors. There is uncertainty in the law concerning whether the hot pursuit of a person suspected of a misdemeanor is sufficient to constitute an "exigent circumstance" that frees police from the warrant requirement. Based on this uncertainty, the Court concludes that Defendants are not entitled to summary judgment on the merits of Count II.

However, Defendants are entitled to the protection of the qualified immunity doctrine, which shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). While the Supreme Court does "'not require a case directly on point' before concluding that the law is clearly established,'" the "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011)).

In *Welsh*—which involved an in-home arrest for a non-jailable DUI offense, but no "hot pursuit" from the scene of the crime—the Supreme Court recognized that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." 466 U.S. at 753. Thus, the Court cautioned, "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense * * * has been committed." *Id.* The Court held that the Fourth Amendment prohibited officers from making a

warrantless, nighttime entry into the home of an individual who was suspected of DUI. *Id.* at 754-55. The Court did not, however, set a categorical rule that exigent circumstances cannot exist where the underlying offense is a misdemeanor or a noncriminal offense, or expressly limit the application of *Santana*'s "hot pursuit" exception to cases involving felonies.

In a handful of cases not involving hot pursuits, the Seventh Circuit has read *Welsh* "to hold 'that, at a minimum, exigent circumstances do not exist when the underlying offense is minor, typically a misdemeanor.'" *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014) (quoting *Reardon,* 811 F.2d at 1028) (police officers who arrived at scene of domestic dispute lacked probable cause based on exigent circumstances to enter arrestee's home to investigate alleged dispute between arrestee and his girlfriend, and thus violated Fourth Amendment, where arrestee's girlfriend who had called emergency services following drunken domestic altercation with arrestee informed officers that she was not injured, that the altercation had been only verbal, apologized for calling emergency services, informed police officers that she was locked out of arrestee's home and that she needed to get her own keys from inside, and arrestee repeatedly told officers to leave his home leading the officers to threaten him with arrest); see also *Reardon*, 811 F.2d at 1029-30 (there were sufficient exigent circumstances to justify warrantless entry of fraternity house, where officers were faced with call reporting burglary in progress at house during that time of year when students were on break and burglaries were known to occur more frequently, and when they arrived, they found a single car in driveway and door to residence unlocked); *Clark v. Henninger*, 221 F.3d 1338, 2000 WL 968044, at *4-5 (7th Cir. 2000) (recognizing, in a case not involving a hot pursuit, that "the Supreme Court's decision in *Welsh* casts considerable doubt on the reasonableness" of a home entry to make a misdemeanor arrest, and reversing district court's 12(b)(6) dismissal of Clark's Fourth Amendment claim).

The Seventh Circuit has not specifically addressed, however, whether the hot pursuit of an individual suspected of a misdemeanor could ever constitute an exigent circumstance. Given that *Santana* is not expressly limited to felonies, and that *Welsh* and the Seventh Circuit cases applying *Welsh* did not involve hot pursuits, there is some uncertainty concerning whether police who attempt to arrest a suspected misdemeanant in a public place can pursue the suspect into his home if he flees during the attempted arrest. This uncertainty is reflected in the case law. In *Alto v. City of Chicago*, 863 F. Supp. 658 (N.D. Ill. 1994), Judge Aspen applied the hot pursuit exception in a case where a suspected misdemeanant, Alto, fled from officers who attempted to speak with him in a public park. *Id.* at 660. The officers chased Alto into his home and, following a struggle, Alto was shot. *Id.* Judge Aspen ruled that the officers were entitled to qualified immunity against Alto's estate's section 1983 unlawful entry claim. *Id.* at 661-62. Judge Aspen explained that, pursuant to *Welsh*, the misdemeanor offense "could not by itself justify a warrantless arrest of Alto in his home." *Id.* at 662. However, Judge Aspen found, the officers "were in 'hot pursuit' of Alto, and were not required to halt their pursuit simply because Alto sought sanctuary in his home." *Id.* Judge Aspen also found that another exigent circumstance existed—the suspect was armed with a knife, *id.*—but did not address whether this additional exigency was necessary to his ultimate holding that the officers did not violate Alto's clearly established constitutional right.

In *Wear*, the Illinois Supreme Court, applying *Santana*, held that police officers did not violate the Fourth Amendment when they pursued an individual who was suspected of misdemeanor DUI into her house after she ignored police telling her to stop and return to her vehicle. *Wear*, 893 N.E. 2d at 644-46. The Court distinguished *Welsh* on the basis that Illinois considers a first DUI to be a Class A misdemeanor punishable by up to 364 days in jail, whereas

the Wisconsin statute at issue in *Welsh* classified a first DUI as a nonjailable civil offense.  *Id.* at 645-46.  The concurring opinion criticized the majority for not "treat[ing] the seriousness of the offense as a factor in its determination of whether exigent circumstances exist."  *Id.* at 647 (Burke, J., specially concurring).  Although the Illinois Supreme Court's ruling is not binding on the federal courts, it is "relevant as to what the defendants might have thought the law, including the federal constitution, permitted them to do" when they arrested Burns.  *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 573 (7th Cir. 2014).  This is because "[f]ederal courts do not possess exclusive authority to decide Fourth Amendment issues; state courts resolve such issues every day."  *Id.*

The Court views as most significant the Supreme Court's own recognition, in 2013, that "federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect."  *Stanton*, 134 S. Ct. at 5.  In *Stanton*, the Supreme Court considered whether an officer in California who made a warrantless entry into the fenced yard of a home in hot pursuit of a man suspected of a jailable misdemeanor offense, with probable cause, was entitled to qualified immunity against a § 1983 claim brought by the home's occupant.  *See id.*  The Supreme Court clarified that, "despite [its] emphasis in *Welsh* on the fact that the crime at issue was minor—indeed, a mere nonjailable civil offense—*nothing in the opinion establishes that the seriousness of the crime is equally important in cases of hot pursuit.*"  *Id.* at 6 (emphasis added).  After reviewing its decision in *Welsh* and decisions from the Ninth Circuit and California state courts, the Supreme Court concluded that the officer's actions were not "plainly incompetent" under governing law and that the officer was entitled to qualified immunity.  *Id.* at

7. The Court declined to "express any view" on whether the officer's actions were, in fact, constitutional under the Fourth Amendment. *Id.*

Given the unsettled state of the law at the time of the pertinent events concerning the hot pursuit of a suspected misdemeanant who flees from an arrest into his home, the Court concludes that Defendants are entitled to qualified immunity. Burns cannot demonstrate that he suffered a "clearly established" constitutional violation when Defendants entered his home without a warrant on August 27, 2010 to finish the arrest that began on the front porch. See *Stanton*, 134 S. Ct. at 5.

## C.  False Arrest

In Count IV of their complaint, Burns alleges that Defendants Kmiecek, Gomboz, and Soderlund arrested him on August 27, 2010 without a warrant, probable cause, or other justification. Defendants move for summary judgment on Count IV on two grounds, which the Court addresses in turn below.

### 1.  Probable cause (Defendant Soderlund)

Defendant Soderlund argues that he is entitled to summary judgment on Burns' false arrest claim because Defendants had probable cause to arrest Plaintiff for theft. "Probable cause is an absolute bar to a § 1983 claim for false arrest." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Where "an officer relies upon two distinct factual bases (and thus correspondingly two distinct legal charges) to arrest an individual, the existence of probable cause as to either charge—which alone is sufficient to justify an arrest—is a proper defense to a Section 1983 action based on that single arrest." *Nielsen v. Vill. of Lake in the Hills*, 948 F. Supp. 786, 793 n.6 (N.D. Ill. 1996). The Court already determined above that Defendants had probable cause to

arrest Burns for theft and for resisting police. Therefore, Soderlund is entitled to summary judgment on Count IV.

### 2. Participation in arrest (Defendants Gomboz and Kmiecik)

Defendants Gomboz and Kmiecik argue that they are entitled to summary judgment on Burns' false arrest claim because "Burns' own testimony demonstrates that neither Kmiecik nor Gomboz participated in his arrest." [87] at 14-15. The Court is not persuaded by this argument. First, Defendants cite no case law concerning what is necessary to be considered a participant in a false arrest. Second, Burns' testimony about Soderlund does not demonstrate a *lack* of participation by Kmiecik or Gomboz. Burns simply testified that Soderlund handcuffed him ([88-7] at 5 (Tr. 151:18-23)); that Soderlund escorted him outside the house ([88-7] at 6 (Tr. 153:3-7)); and that Soderlund put him in a squad car ([88-7] at 7 (Tr. 159:5-17)). Other evidence in the record suggests that Kmiecik and Gomboz did play an active role in Plaintiffs' arrest. Soderlund, Gomboz, and Kmiecik "drove to Burns' residence to arrest Burns." [88] at 6. They had a plan to complete the arrest: the younger female officer, Kmiecik, would ring Plaintiffs' doorbell and attempt to get Burns to speak with her outside. The two male officers would then announce their presence and help complete the arrest. [87] at 18. Therefore, the Court concludes that Gomboz and Kmiecik are not entitled to summary judgment on Burns' false arrest claim on the basis that they did not participate in his arrest. However, because Plaintiffs have failed to demonstrate an absence of probable cause for Burns' arrest, Gomboz and Kmiecik are entitled to summary judgment on Count IV for the same reason as Soderlund. Because this disposes of the false arrest claim, it is unnecessary for the Court to reach Defendants' arguments concerning qualified immunity and judicial estoppel.

**D.      Malicious Prosecution**

In his claim for malicious prosecution, Burns alleges that the Defendant officers instituted charges against him for theft and resisting a police officer, that there was not probable cause for the charges, and that the charges were terminated in a manner favorable to Burns. Defendants seek summary judgment on the malicious prosecution claim on three grounds, which the Court discusses in turn below.

**1.      Termination of the prosecution in Burns' favor (Defendants Gomboz, Kmiecik, and Soderlund)**

Defendants argue that Burns cannot show that the criminal proceedings were terminated in a manner favorable to him. According to Defendants, the "judge who heard Burns' case did not make any specific findings as to the merits of the State's case but instead, found him not guilty based on 'the defective charging document.'" [87] at 3. The Court concludes that Defendants are not entitled to summary judgment on this basis because their argument is not supported by the record. Instead, the trial transcript indicates that the trial judge, Judge Havis, made findings on the merits of the theft charge, at a minimum. Specifically, Judge Havis found Burns not guilty of theft (Count 1), because there was no testimony concerning the alleged theft. [88-6] at 16-17. Judge Havis found Burns not guilty of resisting arrest (Count 2), at least in part because there was a defect in the original charging document. *Id.* However, Defendants have not provided a large enough excerpt of the trial transcript for the Court to assess whether Judge Havis made any other findings concerning the resisting arrest charge.

**2.      Lack of probable cause (Defendants Gomboz, Kmiecik, and Soderlund)**

Defendants argue that, "[t]o the extent Burns is arguing that he was maliciously prosecuted for theft, that claim fails because * * * there was probable cause to arrest and charge

him for theft." [87] at 23. The Court agrees, for the same reason explained above in relation to Burns' second unlawful entry claim. The Court also concludes, for the same reason explained above, that Defendants had probable cause to prosecute Burns for resisting police.[9]

### 3. Commencement and continuation of criminal proceedings (Defendants Gomboz and Kmiecik)

Gomboz and Kmiecik argue that they are entitled to summary judgment on Count V because they did not commence or continue the criminal proceeding against Plaintiff. "[I]n order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (quoting *Denton v. Allstate Ins. Co.*, 504 N.E.2d 756, 760 (Ill. App. 1987)). "In Illinois, criminal proceedings are commenced by the filing of a complaint, an indictment, or an information." *Logan v*, 246 F.3d at 922 (citing 725 ILCS 5/111–1). A defendant may also be held responsible for continuing a prosecution by "actively encouraging the prosecution despite knowing that no probable cause existed." *Szczesniak v. CJC Auto Parts, Inc.*, 21 N.E.3d 486, 491 (Ill. App. 2014). Under this theory, "liability should be imposed where the defendant takes an 'active part in [the] prosecution after learning there is no probable cause for believing the accused guilty' and where its 'share in continuing the prosecution [is] active, as by insisting upon or urging further prosecution.'" *Denton*, 504 N.E. 2d at 760 (quoting Restatement (Second) of Torts § 655, Comment C (1977)).

Applying these standards, the Court concludes that Gomboz is entitled to summary judgment on Plaintiffs' malicious prosecution claim. There is no evidence that Gomboz filed a

---

[9] The Court must consider both charges, because "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007).

complaint, indictment, or information against Burns, or that he had any role in continuing Burns'
prosecution once it was initiated. The Court also concludes that Kmiecik cannot be held
responsible for commencing the prosecution, because the undisputed evidence is that Soderlund,
and Soderlund alone, decided to file criminal charges against Burns.

The final question is whether Kmiecik bears any responsibility for continuing the
proceedings against Burns. Kmiecik did testify at Burns' trial, and Burns' prosecution for
resisting arrest was based on the allegation that Burns pushed Kmiecik's hand off of him and fled
into his house. However, as Defendants point out, Kmiecik is immune from suit for damages
based on her trial testimony. See *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 274-75 (Ill.
App. 2002). This "privilege derives from a public policy aiming to further the truth-seeking
function of litigation by permitting witnesses to testify freely without fear of subsequent civil
liability." *Id.* Plaintiffs have failed to submit any evidence suggesting that Kmiecik played any
role in the continuation of the prosecution other than testifying at trial. Therefore, Kmiecik is
entitled to summary judgment on Plaintiffs' malicious prosecution claim.

**V.    Conclusion**

For the reasons stated above, Defendants' motion for partial summary judgment [86] is
granted. The Court enters judgment for Bell, Hull, and Soderlund and against Plaintiffs on
Plaintiffs' first claim for unlawful entry (Count I). The Court enters judgment for Gomboz,
Kmiecik, and Soderlund and against Plaintiffs on Plaintiffs' second claim for unlawful entry
(Count II). The Court enters judgment for Gomboz, Kmiecik, and Soderlund and against Burns
on Burns' claim for false arrest (Count IV). The Court enters judgment for all of the individual
Defendants and against Burns on Burns' claim for malicious prosecution (Count V). The Court
enters judgment for Defendant Bell and against Plaintiffs on Plaintiffs' claim for failure to

intervene (Count VI).

The following claims remain in the case: the excessive force claim against Gomboz, Kmiecik, and Soderlund (Count III); the failure to intervene claim against Gomboz, Kmiecik, and Soderlund (Count VI); and the indemnification claim against the Village (Count VII).

This case is set for further status hearing on March 22, 2016, at 9:00 a.m.


Dated: March 14, 2016

_____

Robert M. Dow, Jr.
United States District Judge